804 So.2d 916 (2001)
Marc CLEARY
v.
LEC UNWIRED, L.L.C.
No. 2000 CA 2532.
Court of Appeal of Louisiana, First Circuit.
December 28, 2001.
*917 Stephen J. Holliday, Baton Rouge, LA, for plaintiff-appellant Marc Cleary.
John S. Bradford, Lake Charles, LA, for defendant-appellee LEC Unwired, L.L.C.
BEFORE: FOIL and PETTIGREW, JJ., and KLINE[1], J., Pro Tem.
*918 PETTIGREW, J.
In this summary proceeding, Marc Cleary sought unpaid wages in the form of commissions from his previous employer, LEC Unwired, L.L.C. ("LEC"). The trial court rendered judgment in favor of LEC, concluding that the commissions at issue were not earned. This appeal by Mr. Cleary followed. For the reasons set forth below, we affirm the trial court's judgment.

FACTS AND PROCEDURAL HISTORY
Mr. Cleary began working at LEC in September of 1999 as an account executive. According to the terms of his employment, Mr. Cleary was to receive a salary of $24,000.00 per year, plus commission and an expense allowance. There was some dispute as to exactly what Mr. Cleary was told at the time he was hired regarding the commission plan. Mr. Cleary acknowledged he was aware that commissions on his sales would be paid at a rate of 55 percent in the month following the sale, and then 15 percent per month for the following three months. However, Mr. Cleary indicated that he was not aware that he would forfeit commissions if he was terminated or resigned.
Mr. Cleary resigned in March of 2000. His last paycheck was for the pay period ending March 24, 2000, and included his regular salary, commissions for February and March, and payment for unused vacation days. In early April 2000, Mr. Cleary, through his counsel of record, sent a letter to LEC demanding payment of wages that he alleged had been withheld from his final paycheck. Mr. Cleary requested payment of $4,856.04 for the following items: $329.63 for four days of wages, $86.63 for expenses related to a business trip to Lake Charles, Louisiana, and $4,439.78 in commissions. LEC did not respond to Mr. Cleary's demand, prompting Mr. Cleary to file suit via summary proceeding against LEC on April 27, 2000. In his petition, Mr. Cleary alleged that LEC was in violation of La.R.S. 23:635 by withholding certain sums from his wages. He further asserted that pursuant to La.R.S. 23:631 and 23:632, he was entitled to the following: 1) wrongfully withheld wages in the amount of $329.63; 2) referral incentives in the amount of $1,000.00; 3) commissions in the amount of $4,439.78; 4) wrongfully withheld wages in the form of incentive pay and vacation; 5) expenses in the amount of $86.63; 6) penalty wages in accordance with La.R.S. 23:631, et seq.; and 7) attorney fees in the amount of $6,500.00. The matter was scheduled for hearing on June 12, 2000, at which time LEC presented evidence attempting to prove that the commissions at issue were not owed to Mr. Cleary, as they were not earned at the time of his resignation. LEC further argued that the referral incentives that Mr. Cleary was trying to recover were not available to him because the company had cancelled the referral incentive program prior to Mr. Cleary's employment at LEC.
After considering the evidence submitted and the argument of both counsel, the trial court found in favor of LEC, dismissing Mr. Cleary's claim with prejudice. The trial court concluded that the commissions at issue were not earned, that Mr. Cleary was not entitled to any referral incentives, and that Mr. Cleary was not entitled to penalties or attorney fees. A judgment in accordance with the trial court's findings was signed on June 30, 2000. Thereafter, on July 11, 2000, Mr. Cleary filed a motion for new trial, which was denied ex parte by the trial court on July 12, 2000. This appeal by Mr. Cleary followed, wherein he urged the trial court erred in: 1) failing to determine whether *919 an agreement existed between the parties regarding withholding payment of commission as wages; 2) failing to find that LEC's compensation policy violated La. R.S. 23:634; 3) failing to hold a contradictory hearing on his motion for new trial; 4) failing to find that a potestative or suspensive condition existed in LEC's compensation policy; 5) failing to find that his consent to the agreement was vitiated by error as set forth in La.Civ.Code art. 1948; and 6) failing to award penalties and attorney fees.[2]

STANDARD OF REVIEW
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const., art. V, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La. 1993).
For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.

LEC'S COMMISSION POLICY
In his first assignment of error, Mr. Cleary argues that the trial court erred by refusing to determine whether there was an agreement between the parties regarding withholding payment of commissions as wages. In brief, Mr. Cleary acknowledges "[t]here is no dispute that the terms of employment guaranteed him a commission based on his sales at a rate of 55%, 15%, 15%, 15% over time." He argues, however, that he never agreed to forfeit his commissions upon termination and that there was no requirement that commissions be "earned" by providing additional services or support following a sale of LEC's product. Mr. Cleary further contends that absent an agreement between the parties, commissions are due at the time of the sale.
In response, LEC argues that the trial court correctly ruled that Mr. Cleary was aware of the commission policy and could have sought additional information about same if he truly had questions. LEC asserts that it proved commissions were not earned until the time limits under the policy had been fulfilled. Based on our review of the record, we agree with LEC's position regarding this issue.
The first witness to testify in this matter was Bryan Stanley, LEC's Director of *920 Sales since July 1999. According to Mr. Stanley, LEC's commission plan provided that in the month following a sale, an account executive would receive 55 percent of the commission due, with the remaining 45 percent being paid out equally over the next three months. If an employee was terminated or resigned, commissions would only be paid through the end of the last month of employment. Any commissions scheduled for payment after that time would not be paid to the employee, as they would not have been earned. Mr. Stanley indicated that an account executive was not only responsible for selling LEC's products, but also for maintaining a relationship with their customers and working with members of other departments, including customer care, to consistently serve their customers in an efficient and professional manner at all times.
In an offer letter dated September 16, 1999, Mr. Cleary was advised that he would receive a base salary of $24,000.00 per year and would be eligible for commission earnings as outlined in the commission plan. Mr. Cleary signed this letter on September 20, 1999, agreeing to the terms of his employment with LEC. Mr. Stanley testified that Mr. Cleary could have requested at any time to review LEC's commission plan. Further, he added that he personally advised Mr. Cleary of the commission policy after he was hired and that Mr. Cleary's manager, Greg Watford, also reviewed the commission plan with Mr. Cleary during the interview process.
With regard to Mr. Cleary's demand for unpaid commissions, Mr. Stanley testified that Mr. Cleary was paid all the commissions that were owed to him as of the time of his resignation. After reviewing Mr. Cleary's commission runs, Mr. Stanley indicated that had Mr. Cleary remained at LEC and continued working on his various accounts, he would have been owed an additional $595.76 in commissions for April and May of 2000. He noted, however, that Mr. Cleary was not paid these commissions because he resigned before they were earned.
Mr. Cleary also testified before the trial court concerning his claim for unpaid commissions. He indicated that while he was aware that he would be paid commissions on a 55, 15, 15, 15 basis, he was not aware that LEC had a commission policy or that he would be required to forfeit commissions if he was terminated or resigned. Mr. Cleary testified that Mr. Stanley did not make the commission policy clear to him and that had he known about the forfeiture of commissions upon termination or resignation, he would not have taken the job. He added that he never entered into a contract with LEC to forfeit any commissions. Mr. Cleary acknowledged, however, that he had never asked to read the commission plan referred to in his offer letter.
Mr. Cleary submitted a letter of resignation on March 15, 2000, and his last day of employment with LEC was March 16, 2000. Before resigning, Mr. Cleary spoke with his manager, Greg Watford, about the commission policy at LEC. According to Mr. Cleary, Mr. Watford told him he should be paid on all of his accounts and gave no indication that Mr. Cleary would be forfeiting any of his commissions because he was resigning. When Mr. Cleary was not compensated as he believed he would be, he made a demand on LEC for payment of unpaid wages, business expenses, and unpaid commissions totaling $4,856.04.
A document entitled "Account Executive COMPENSATION PLAN" was introduced into evidence at the hearing of this matter. The plan provides as follows with respect to commission payments:

*921 COMMISSIONS PAYMENT: 55% of payable commission is paid at installation. Additional payment of 15% per month for three consecutive months. This minimizes the impact of any chargebacks associated with cancelled service. After the final payment, there will be no chargeback liability.
For Example: The sale is made on Jan. 5th and is entered into the system to be installed Jan 22nd. The first percentage of the commission would be paid the second pay period of Feb. And the remaining percentages would be paid in the second pay period of March, April, and May.
Further, the plan contains the following directives with regard to an employee's rights to commissions after separation from employment with LEC:
An employee who terminates employment for any reason will only receive commissions earned, if any, through the revenue month of the effective date of termination. Commissions will be paid during the last payment cycle of the month. No additional commissions will be paid, or considered to have been earned, by an [account executive] after the effective date of termination of employment. For example, an employee who terminates on January 15th will be paid through January sales, which will be paid in the normal commission cycle and payment schedule. Any commissions due beyond that commission pay period will be forfeited.
For example, the rep leaves the company Jan 5. The rep will be paid commission through January sales. The commission check would be paid in February's commission pay period. If the rep had remaining three 15% payments, those would be forfeited.
After considering all of the evidence and argument by counsel, the trial court found in favor of LEC, offering the following oral reasons for judgment:
The crux of the matter, of course, is the commissions that are being claimed and whether or not those commissions were due. There is [a] question as to whether or not there was a contract or an agreement about the compensation plan. The compensation plan that was introduced into evidence ... clearly sets forth the company's position, which is in accordance with the testimony of Mr. Stanley, that if a person is terminated or resigns, they will be paid commissions due during the month of their termination or resignation, but will not receive any commissions that might become due or be earned in the future.
But I don't think it is necessary for me to decide whether there was a contract or an agreement on this plan. The uncontradicted testimony of Mr. Stanley was that commissions were paid as they were earned. And commissions were earned by the account executives' continued maintenance and for lack of a better word, taking care of the account until they were installed and were up and running for several months. And there is obviously a business reason for that. The company wants the salesperson or account executive concerned with the customer and not to write the customer off and let them hang in the wind after the sale has been made. And there is obviously a reason for paying out these commissions over a four month period. If Mr. Cleary had any question about that or why he was referred to the agreement in his offer letter, he could have checked with them and found out what he needed to find out at that time. But whether there was a contract or not, the uncontradicted testimony is that the commissions that Mr. Cleary contends were due for May andfor April and *922 May and for these new accounts that were not even installed at the time that he left, was that those commissions were not earned. So I do not feel he is entitled to any additional amounts for any commissions.
The trial court's factual findings in the present case were based largely on credibility determinations. We have thoroughly reviewed the entire record in this matter and find that a reasonable basis exists for the trial court's findings. The testimony as to whether Mr. Cleary was aware of LEC's commission plan was conflicting. After hearing all of the evidence, the trial judge made credibility determinations that must be afforded "great deference." We agree with the trial court's finding that it was not necessary to determine whether there was a contract or agreement between LEC and Mr. Cleary regarding the forfeiture of commissions. LEC's commission plan clearly provided that an employee who was either terminated or resigned would be compensated only for earned commissions as of the date of separation. After considering the evidence in its entirety, we find no manifest error in the trial court's conclusion that the commissions at issue were not earned at the time of Mr. Cleary's resignation, and thus, Mr. Cleary was not entitled to any additional commissions. Mr. Cleary's assignment of error regarding this issue is without merit.

NEW TRIAL
In assignment of error number three, Mr. Cleary argues that the trial court erred by denying his motion for new trial without a contradictory hearing. We disagree.
It is well settled in Louisiana that a motion for new trial may be summarily denied in the absence of a clear showing in the motion for new trial of facts or law reasonably calculated to change the outcome or reasonably believed to have denied the applicant a fair trial. Sonnier v. Liberty Mutual Insurance Company, 258 La. 813, 248 So.2d 299, 302-03 (1971). This is a matter of discretion for the trial court. Allen v. Noble Drilling (U.S.) Inc., 93-2383, p. 6 (La.App. 4 Cir. 5/26/94), 637 So.2d 1298, 1302. Generally speaking, it is not erroneous for the trial court to deny a motion for new trial without a hearing if the motion simply reiterates issues thoroughly considered at the trial on the merits. Caffery v. Powell, 320 So.2d 223, 227 (La.App. 3 Cir.1975).
In applying for a new trial, Mr. Cleary reiterated issues that were thoroughly considered by the trial court at the trial on the merits. Based on our review of the affidavit submitted by Mr. Cleary and the facts set forth in his motion for new trial, we conclude Mr. Cleary did not present any fact or law reasonably calculated to change the outcome of this case. Thus, we find no error in the trial court's ex parte denial of Mr. Cleary's motion. This assignment or error is without merit.

PENALTY WAGES AND ATTORNEY FEES
In his final assignment of error, Mr. Cleary asserts that the trial court erred in failing to award penalty wages and attorney fees as required by law. As prayed for in his petition, Mr. Cleary requests attorney fees in the amount of $6,500.00 and penalty wages as provided for in La. R.S. 23:632. LEC argues that because there was no showing of an arbitrary or capricious withholding of wages, Mr. Cleary was not entitled to penalty wages. Further, LEC contends that the trial court correctly held that this was not a well-founded suit and thus, Mr. Cleary was not entitled to attorney fees. We agree with LEC.
*923 Louisiana Revised Statutes 23:632 provides as follows with regard to the liability of an employer for failure to pay wages within three days of termination:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
The statute is penal in nature and must be strictly construed. It is designed to compel prompt payment of wages upon an employee's discharge or resignation. Boudreaux v. Hamilton Medical Group, Inc., 94-0879, p. 4 (La.10/17/94), 644 So.2d 619, 621. Thus, to recover penalties under La. R.S. 23:632, three criteria must be met: (1) The employee must prove that wages were due and owing; (2) that demand for payment was made at the place where the employee was usually paid; and (3) that the employer failed to pay upon demand. Pokey v. Five L Investments, Inc., 96-0018, p. 5 (La.App. 1 Cir. 9/27/96), 681 So.2d 489, 492.
With regard to attorney fees, La.R.S. 23:632 provides for the award of reasonable attorney fees in the event that a plaintiff files a well-founded suit for unpaid wages. A recognized purpose of the legislative grant of attorney fees by La. R.S. 23:632 is to foster the availability of counsel to workers who have been unlawfully denied earned compensation. Cochran v. American Advantage Mortgage Company, Inc., 93-1480, p. 9 (La.App. 1 Cir. 6/24/94), 638 So.2d 1235, 1240. Clearly, attorney fees are due when "to recover wages due him an employee is forced to file a well-founded suit for their payment." Carriere v. Pee Wee's Equipment Company, 364 So.2d 555, 556 (La.1978). The award of reasonable attorney fees is mandatory when an employee brings a "well-founded" suit for unpaid wages, irrespective of any equitable defenses that may have been raised. Suits in which the recovery of back wages is granted are considered "well-founded." See Pokey, 96-0018 at 11-12, 681 So.2d at 496; Glover v. Diving Services International, Inc., 577 So.2d 1103, 1108-09 (La.App. 1 Cir.1991). Reasonable attorney fees are to be awarded in the event that the employee files a well-founded suit for unpaid wages, even if penalty wages are not due. Cochran, 93-1480 at 9, 638 So.2d at 1240.
As previously indicated, Mr. Cleary failed to prove that at the time of his resignation, he was owed any additional commissions other than what he had already been paid. Rather, it was established at trial that the commissions at issue were never earned by Mr. Cleary. Thus, Mr. Cleary failed to prove his entitlement to penalty wages as required by La.R.S. 23:632. Further, as Mr. Cleary was not awarded any wages for past-due commissions, his suit was not well-founded. Accordingly, based on the record before us, we conclude that the trial court correctly declined to award penalty wages and attorney fees to Mr. Cleary. This assignment of error is meritless.

*924 CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed in all respects. All costs associated with this appeal are assessed against plaintiff-appellant, Marc Cleary.
AFFIRMED.
NOTES
[1] Judge William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We note that the issues briefed in assignments of error numbers two, four, and five were not raised at the trial court level. Issues not submitted to the trial court for decision will not be considered by the appellate court on appeal. Uniform Rules, Courts of Appeal, Rule 1-3. Thus, Mr. Cleary is precluded from raising these issues on appeal.