950 So.2d 759 (2006)
Matthew D. GRAVES
v.
AUTOMATED COMMERCIAL FUELING CORPORATION.
No. 2005 CA 2561.
Court of Appeal of Louisiana, First Circuit.
November 3, 2006.
*760 Marvin E. Owen, Baton Rouge, Counsel for Plaintiff/Appellee Matthew D. Graves.
*761 David L. Guerry, Jennifer J. Vosburg, Jamie Hurst Watts, Baton Rouge, Counsel for Defendant/Appellant Automated Commercial Fueling Corporation.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
McCLENDON, J.
The defendant, Automated Commercial Fueling Corporation, d/b/a Fuelman of Baton Rouge (Fuelman), appeals the trial court's judgment in favor of the plaintiff, Matthew D. Graves, awarding him commissions, penalty wages, and attorney fees. For the reasons that follow, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
Fuelman is in the business of providing commercial customers with fuel access accounts and related vehicle tracking and information services. This information is received through access cards that Fuelman provides to commercial vehicle fleets. Fuelman offered Graves a position as a sales representative on July 3, 2000. Graves accepted the offer, signing the letter of employment on July 6, 2000. In addition to a base salary, Graves was paid on a commission basis, which was described in his letter of employment as:
20% of the gross profit for all new accounts; commission period for those accounts will be for sixteen (16) weeks.
Graves signed a Sales Representative Employment Agreement and was also provided a Fuelman Employee Handbook.
After nearly a year, Graves was terminated by Fuelman on June 29, 2001. At the time of his termination, new accounts opened by Graves were still within the 16-week commission period. Fuelman took the position that because Graves was no longer servicing the accounts, he was not entitled to the commissions. Subsequently, Graves demanded payment of the unpaid commissions, Fuelman failed to remit payment, and Graves filed suit seeking the unpaid commissions, as well as penalty wages and attorney fees.
On July 1, 2005, a bench trial was held on the merits. The parties stipulated that the amount of commissions at issue was $4,813.79. In written reasons issued on August 16, 2005, the trial court concluded that the commissions were earned and awarded Graves $4,813.79 for the claimed commissions, penalty wages in the amount of $15,399.90, and attorney fees in the amount of $8,750.00, together with legal interest and costs. Judgment was signed on August 23, 2005. Thereafter, Fuelman filed a motion for new trial, which was denied by the trial court. Fuelman now appeals, asserting the trial court erred in finding that the unpaid commissions were earned by Graves, and in awarding penalty wages. Graves has answered the appeal seeking additional attorney fees for the appeal.

STANDARD OF REVIEW
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. Stobart v. State, Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993). For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *762 Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given great deference by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Cleary v. LEC Unwired, L.L.C., 00-2532, pp. 3-4 (La.App. 1 Cir. 12/28/01), 804 So.2d 916, 919.

DISCUSSION
At the beginning of the trial in this matter, the parties agreed to several stipulations of fact. Among the stipulations, it was agreed that Fuelman never provided Graves with a written statement of any sort indicating that commissions during the 16-week commission period applied only to sales representatives actively employed by Fuelman or that the commissions would be forfeited if the employee left employment with Fuelman. The parties further stipulated that there were no written policies of Fuelman during Graves' employment that related to future commissions during the 16-week period after termination; that there were no written documents, policy statement, employee handbook, or other documents of Fuelman during Graves' employment that indicated any requirement that sales representatives had to continue to work with customers to maintain or service an account after an account sale had been made; and that there was no written documentation by Fuelman to support a claim that Graves knew that commissions would not be paid to him after termination.
In this appeal, Fuelman initially asserts that the trial court erred in interpreting this Court's decision in Cleary to require a written commission policy. Fuelman is incorrect. The trial court in this matter simply recognized that in the Cleary case, a written policy as to commissions existed, that Mr. Cleary was told about the policy, and that the policy was available for Mr. Cleary's review. Thus, according to the commission policy in place, Mr. Cleary was not entitled to commissions after his separation from employment. The Cleary case is clearly distinguishable from the present case on its facts.
Fuelman also asserts, however, that the commissions at issue were never earned. Graves testified at trial, as did two former sales representatives of Fuelman, Kelley Lambert and Penny Lavespere. Graves testified that, as a sales representative, it was his job to find new customers for Fuelman, get their credit approval, deliver their fuel access cards, and give them basic instructions on how to use them. At that point, they were considered new customer accounts. Graves further testified that once the account was installed and up and running, sales representatives were given thirty days to choose when to move the account into what was called the "commission bucket" to begin computing the 16-week commission period. Graves testified that he was not required to follow up with his customers once the account was installed, but that he had the discretion to follow up within the first thirty days of the account to handle any problems so the customer would use the account to its maximum potential and pump more fuel, which would maximize his commission. Graves testified that it was his understanding that once the account was installed, he earned his commission on that account.
Lambert and Lavespere also testified that once a new customer was installed *763 and began pumping, no further work was required of them to begin drawing commissions. They stated that they made calls on their customers after the accounts were established, not as a requirement of their job, but to maximize their commissions. Further, all three witnesses testified that the customer service department of Fuelman would follow the account, because the sales representatives were told to go out and make new sales. Lambert and Lavespere also testified that they were not told about, nor did they receive, any documentation regarding commissions upon separation from employment.
Defendant's witnesses at trial were Lauri Decell, the former comptroller of Fuelman, and Troy Sullivan, Fuelman's former president. The trial court found that Decell was not a credible witness. With regard to earning a commission, Sullivan testified that commissions were based on an employee's continued service of an account for the 16-week period. He stated that the sales representative was expected and required to call on that account. Sullivan acknowledged, however, that a sales representative was entitled to his commission when the account was moved into the commission bucket. As to Fuelman's position that only active employees were entitled to commissions, Sullivan acknowledged that there was no written policy but stated he believed that there was "a clear understanding that if you were no longer working, you were no longer earning your commissions." He stated that it had always been the position of Fuelman to not pay commissions after separation from employment and that the policy was well known.
We have thoroughly reviewed the entire record in this matter and find that a reasonable basis exists for the trial court's finding that Graves was entitled to the earned commissions at the time of his termination. The testimony as to whether a commission plan existed and was known by the employees of Fuelman was conflicting. The trial court's findings were based in large part on credibility determinations. The trial court obviously found Graves and his witnesses more credible than Fuelman's. Further, Graves presented evidence that he was never told of any policy by Fuelman regarding forfeiture of commissions upon separation from employment, and Fuelman could produce no evidence that Graves was actually told of any policy. With regard to when commissions were earned, the evidence shows that a sales representative's efforts were made before the new customer began to pump fuel. The employee completed the work required of him to earn a commission when the account was installed and pumping began. It was at this point that he could decide when to move the account into the commission bucket. Furthermore, once in the commission bucket, the customer service department would handle the account.[1] After considering the evidence in its entirety, we find no manifest error in the trial court's conclusion that the commissions at issue were earned at the time of Graves' termination.
Fuelman also assigns as error the trial court's award of penalty wages.[2] Louisiana Revised Statute 23:631 imposes a duty on the employer, upon discharge or resignation of an employee, to pay the employee *764 the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge.[3] LSA-R.S. 23:631. The penalties for noncompliance with this statute are found in LSA-R.S. 23:632, which provides:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
Louisiana Revised Statute 23:632 is penal in nature and therefore must be strictly construed. This statute is designed to compel prompt payment of wages upon an employee's discharge or resignation. Pokey v. Five L Investments, Inc., 96-0018, p. 5 (La.App. 1 Cir. 9/27/96), 681 So.2d 489, 492. To recover penalty wages, the claimant must show that (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand. Miller v. Heidi's Inc. of Baton Rouge, 01-0627, p. 4 (La.App. 1 Cir. 5/10/02), 818 So.2d 959, 963. Equitable defenses are available, and penalty wages are not to be absolutely imposed. Generally, when there is a good faith question of whether the employer actually owes past due wages, resistance to payment will not trigger penalty wages. However, when the employer is arbitrary, sets out procedural pitfalls for the employee, or is merely negligent in failing to pay past due wages, penalty wages will be assessed. Pace v. Parker Drilling Co. and Subsidiaries, 382 So.2d 988, 990-91 (La. App. 1 Cir.), writ denied, 383 So.2d 1016 (La.1980). Further, when the failure to pay wages due according to the statute is attributable to neglect or improper pay procedure, the equitable defense is not available. McCaskill v. Deviney Construction Company, 323 So.2d 178, 181 (La. App. 3 Cir.1975), writ denied, 325 So.2d 615 (La.1976). A trial court's findings of fact with regard to whether the plaintiff is entitled to penalty wages cannot be reversed on appeal in the absence of manifest error. Pokey, 96-0018 at p. 5, 681 So.2d at 492.
Fuelman contends that the trial court erred in awarding penalty wages to Graves without making a determination that Fuelman did not have a good faith question as to whether the commissions were due. While the trial court made no specific finding as to a lack of good faith, it clearly determined that the commissions were earned and that no written policy existed regarding commissions after termination.[4] Thus, in awarding penalty wages, the trial court must have determined that *765 Fuelman's failure to pay was attributable to an improper payment procedure; therefore, Fuelman had no equitable defense. After a thorough review of the record, we find no manifest error in the trial court's award of penalty wages.
Finally, Graves seeks an increase in the statutorily-authorized attorney fees for work performed by his counsel on this appeal. An increase in attorney fees is usually awarded when a party appeals, obtains no relief, and the appeal has necessitated additional work on the opposing party's counsel. Cade v. Safety Council of Louisiana Capital Area, 03-0430, p. 7 (La. App. 1 Cir. 12/31/03), 868 So.2d 744, 748; Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1 Cir.), writ denied, 553 So.2d 466 (La.1989). Based on these factors, we award Graves the additional sum of $1,800.00 in attorney fees for the appeal.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed. Fuelman is ordered to pay Graves additional attorney fees in the amount of $1,800.00 for this appeal. Costs of the appeal are also assessed against Fuelman.
AFFIRMED AND ORDER RENDERED.
GUIDRY, J., concurs.
NOTES
[1] When commission sales are at issue, the inquiry focuses on what work associated with the sale remained at the time of termination; where only collection of the fee is outstanding, and collection is beyond the employee's control, the commission is earned. Patterson v. Alexander & Hamilton, Inc., 02-1230 (La. App. 1 Cir. 4/2/03), 844 So.2d 412.
[2] Fuelman did not appeal the award of attorney fees by the trial court.
[3] A 2001 amendment changed the three-day period to fifteen days.
[4] We note that following the termination of Graves, Fuelman implemented a written policy regarding earned commissions following separation from employment.