STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 1566

SHUNTEA SCARBROUGH

VERSUS

LYNMAR HOLDINGS, LLC D/B/A THE LEARNING CENTER

**Judgment Rendered:** AUG 3 1 2022

* * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit Number C698963

Honorable Timothy Kelley, Presiding

* * * * * *

James R. Bullman
Brian F. Blackwell
Baton Rouge, LA

Counsel for Plaintiff/1st Appellant/
Appellee
Shuntea Scarbrough

Corey J. Orgeron
Prairieville, LA

Counsel for Defendant/2nd Appellant/
Appellee
Lynmar Holdings, LLC d/b/a The
Learning Center

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

**GUIDRY, J.**

In this summary proceeding to collect unpaid wages, plaintiff, Shuntea Scarbrough, appeals from a trial court judgment awarding her unpaid wages and reasonable costs but denying her claim for penalty wages and attorney fees. Defendant, Lynmar Holdings, LLC d/b/a The Learning Center (Lynmar), also appeals from the portion of the trial court's judgment awarding Scarbrough reasonable costs. For the reasons that follow, we affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Scarbrough worked for Lynmar from July 9, 2020 through July 21, 2020, as a teacher at The Learning Center at a pay rate of $9.50/hour. On August 19, 2020, Scarbrough filed a Petition for Rule to Show Cause for Unpaid Wages, alleging that her first regular payday should have been July 24, 2020, but that after several oral demands for payment of her wages, she had yet to receive any payment of wages for her work at The Learning Center. Accordingly, Scarbrough sought an award of her unpaid wages along with penalty wages pursuant to La. R.S. 23:631 et seq. due to Lynmar's arbitrary, capricious, and unreasonable refusal to pay the wages she was due. Scarbrough also sought an award for costs and attorney fees.

Lynmar answered Scarbrough's petition, generally denying her allegations, and filed several exceptions and a reconventional demand. Particularly, Lynmar alleged that Scarbrough abandoned her position on July 21, 2020, claiming an illness that would keep her out of work until July 27, 2020. Lynmar alleged that Scarbrough failed to pick up her paycheck on July 24, 2020, in accordance with company policy and failed to return to work on July 27, 2020. After granting Scarbrough a 3-day grace period in accordance with company policy, Lynmar terminated Scarbrough's employment on July 29, 2020, and mailed her paycheck to her.

Following a trial on August 23, 2021, the trial court signed a judgment on September 13, 2021, in favor of Scarbrough and against Lynmar in the amount of

$428.83, together with interest, from the date of judicial demand until paid. The trial court also awarded Scarbrough reasonable costs in the amount of $1,454.19; however, the trial court denied Scarbrough's request for penalty wages and attorney fees. Lynmar filed a motion for reconsideration on October 8, 2021, which was set for hearing on November 22, 2021. Scarbrough filed an appeal of the trial court's September 13, 2021 judgment on October 15, 2021, which was granted on October 19, 2021. Lynmar also filed an appeal of the trial court's September 13, 2021 judgment on December 2, 2021, which was granted on December 3, 2021.

## DISCUSSION

### Penalty Wages

Louisiana Revised Statute 23:631(A)(1)(a) provides that upon discharge of an employee, the employer shall "pay the amount then due under the terms of employment ... on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first." Any employer who fails or refuses to comply with the provisions of La. R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay or for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty. La. R.S. 23:632.

Accordingly, to recover penalties under La. R.S. 23:632, the employee must prove that: (1) wages were due and owing; (2) demand for payment was made at the place where the employee was customarily paid; and (3) the employer did not pay after demand within the time specified by La. R.S. 23:631. See Haber v. Ocean Canyon Properties, Inc., 17-1472, p. 5 (La. App. 1st Cir. 5/31/18), 251 So. 3d 454, 458. Because La. R.S. 23:632 is penal in nature, it must be strictly construed. Haber, 17-1472 at p. 5, 251 So. 3d at 458.

3

Equitable defenses are available, and penalty wages are not to be absolutely imposed. Berard v. L-3 Communications Vertex Aerospace, LLC, 09-1202, p. 14 (La. App. 1st Cir. 2/12/10), 35 So. 3d 334, 345, writ denied, 10-0715 (La. 6/4/10), 38 So. 3d 302. A good faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability, permits the court to excuse the employer from the imposition of penalty wages. Chesterfield v. Genesis Hospice, L.L.C., 13-0179, p. 3 (La. App. 1st Cir. 12/19/13), 137 So. 3d 22, 24. However, when an employer is arbitrary, sets out procedural pitfalls for the employee, or is merely negligent in failing to pay past due wages, penalty wages will be assessed. Berard, 09-1202 at p. 14, 35 So. 3d at 345. Furthermore, reliance on an unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages. Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La. 3/4/98), 707 So. 2d 1233, 1237.

Whether there exists a valid, equitable defense to a claim of penalty wages depends on the particular facts of each case. Berard, 09-1202 at p. 14, 35 So. 3d at 345. A trial court's determination of whether an employer is arbitrary or in bad faith for purposes of imposing penalty wages is a question of fact and is, therefore, subject to the manifest error standard of review. Loup v. Louisiana State School for the Deaf, 98-0329, p. 6 (La. App. 1st Cir. 2/19/99), 729 So. 2d 689, 693.

In the instant case, it is undisputed that Scarbrough worked for Lynmar from July 9, 2020 through July 21, 2020, for a total of 45.14 hours. It is also undisputed that Scarbrough's rate of pay was to be $9.50/hour. Marcus Carmouche, owner of Lynmar, testified at trial that Lynmar issued a check on July 24, 2020, for the pay period July 5, 2020 through July 18, 2020, in the amount of $283.63, representing 35.83 hours worked at a rate of pay of $9.50/hour. Carmouche stated Lynmar had the check available for Scarbrough to pick up from her place of employment, but she failed to retrieve the check on the scheduled payday. Carmouche stated when

4

Scarbrough failed to retrieve her check and failed to return to work, Lynmar waited for three days and then released her from her employment on July 30, 2020. Carmouche further stated that Lynmar issued another check representing the total 45.14 hours worked, but at a rate of pay of $7.25/hour, on July 31, 2020, by mailing the check to Scarbrough at her address on file. Carmouche stated that Lynmar reduced Scarbrough's rate of pay to $7.25/hour per company policy, which provides that Lynmar will reduce wages to minimum wage in the event an employee does not give a full two-week notice prior to resignation. Carmouche further stated Lynmar advised Scarbrough that her check was in the mail when Scarbrough inquired about it, and the next time he heard from Scarbrough was when he was served with her petition. Carmouche stated that he reached out to Scarbrough's counsel, informing him that Lynmar had mailed a check to Scarbrough a week after it issued the first check, and offered to bring a new one to counsel's office; however, such offer was refused.

Scarbrough also testified at trial, stating that she was never paid for her hours worked and that she was never given a check, through the mail or otherwise. Scarbrough stated that she was unaware that the scheduled payday was July 24, 2020, and that she attempted to contact Lynmar on July 31, 2020, to inquire about her employment and about obtaining her paycheck. According to Scarbrough, she went to Lynmar on that date and knocked on the door and called Lynmar, but no one answered the door or the phone. Scarbrough stated that she did not speak with anyone at Lynmar until she called on August 11, 2020, and spoke with an employee named "Charlotte" inquiring about where her paycheck was and if it needed to be picked up or if it was mailed to her. Scarbrough stated that "Charlotte" told her the check had been mailed and that she should have received it. When Scarbrough told her she had not received it, "Charlotte" told Scarbrough to call back at 10:00 a.m. and speak to Lynn, one of the owners of Lynmar. Scarbrough subsequently spoke with Lynn, inquiring about her check, and Lynn told her it had been mailed; however, Lynn was

unable to offer any proof of mailing. Scarbrough had no further contact with anyone from Lynmar after August 11, 2020.

In denying Scarbrough's request for penalty wages, the trial court found that tendering a check for less than $9.50/hour for the hours worked was not a proper tender, but because Lynmar originally wrote a check for the full amount, which it made available for Scarbrough to retrieve from its office, and continued to attempt to mail and/or deliver a check to Scarbrough, albeit for a reduced amount, Lynmar was not in bad faith. In particular, the trial court found that Lynmar relied on its policy to reduce Scarbrough's wages, which policy the trial court acknowledged is contrary to law. However, considering Lynmar's continuous attempts to pay Scarbrough her wages, the trial court found that Lynmar's failure to pay was not malicious.

From our review of the record and the law applicable to this case, we find that the trial court committed error in denying an award of penalty wages. The record clearly establishes that wages were due and owing, that Scarbrough made a demand for payment by calling Lynmar and inquiring about her paycheck, and Lynmar did not pay after demand within the time specified by La. R.S. 23:631. Furthermore, Lynmar may have made available a check for the correct amount of wages then due on July 24, 2020, but when Scarbrough did not return to obtain her check, it elected to re-issue the check for the total number of hours worked at a reduced wage amount. It is this reduced amount that Lynmar attempted to pay on several occasions, first by mail and then by delivery to Scarbrough's counsel.

Accordingly, while equitable defenses are available to mitigate against the imposition of penalties, it is well-settled in the law that reliance on an unlawful company policy does not constitute a good faith, non-arbitrary defense to liability for unpaid wages. As such, while Lynmar may have made multiple attempts to pay Scarbrough after her termination, Lynmar ultimately failed to pay Scarbrough the agreed wage to which she was entitled, and its reliance on an illegal company policy,

whether innocent or not, is insufficient to establish an equitable defense to the imposition of penalty wages.

**Attorney Fees**

Louisiana Revised Statute 23:632(C) states:

Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

The award of reasonable attorney fees is mandatory when an employee brings a "well-founded" suit for unpaid wages, irrespective of any equitable defenses that may be raised by the employer. Haber, 17-1472 at pp. 8-9, 251 So. 3d at 460. A suit is considered "well-founded" when the employee brings a successful suit and recovers unpaid wages. Cleary v. LEC Unwired, L.L.C., 00-2532, pp. 9-10 (La. App. 1st Cir. 12/28/01), 804 So. 2d 916, 923.

In the instant case, the trial court awarded Scarbrough wages in the amount of $428.83, yet failed to award her attorney fees. In so ruling, the trial court seemingly found that Scarbrough was not entitled to attorney fees because Lynmar was not in bad faith. However, as noted above, equitable defenses have no application in the determination of whether attorney fees should be awarded. Rather, attorney fees are *mandatory* if the employee brings a successful suit and recovers unpaid wages. Therefore, the trial court clearly erred in failing to award Scarbrough reasonable attorney fees.[1]

**Award of Court Costs**

In Lynmar's appeal, it contends that the trial court erred in awarding court costs to Scarbrough after finding that Lynmar acted in good faith. Pursuant to La. C.C.P. art. 1920, a trial judge has great discretion in awarding costs. While the general rule

---

[1] We note that reasonable attorney fees are to be awarded in the event that the employee files a well-founded suit for unpaid wages, even if penalty wages are not due. Cleary, 00-2532 at p. 10, 804 So. 2d at 923.

7

is that the party cast in judgment should be assessed with court costs, the trial court may assess costs in any equitable manner and against any party in any proportion it deems just, even against the party prevailing on the merits. See La. C.C.P. art. 1920; St. James Behavioral Health Hospital, Inc. v. Gopalam, 16-0170, p. 4 (La. App. 1st Cir. 7/28/16), 199 So. 3d 639, 642, writ denied, 16-1696 (La. 1/9/17), 214 So. 3d 864.

In the instant case, the trial court rendered judgment in favor of Scarbrough and against Lynmar for the amount of wages owed. Because Ms. Scarbrough was the prevailing party, even though on only a portion of her claim, we do not find that the trial court abused its discretion in ordering Lynmar to pay reasonable costs in the amount of $1,454.19, together with interest thereon, at the legal rate from the date of rendition of the judgment until paid.[2]

**Motion to Strike and For Sanctions**

Scarbrough filed a motion to strike and for sanctions in this court based upon statements made by counsel for Lynmar in its appellate brief, which Scarbrough alleges violate Rule 2-12.2(C) of the Uniform Rules of the Courts of Appeal. Particularly, Scarbrough asserts that counsel for Lynmar stated, in his appellate brief, that Scarbrough's counsel "attempted to extort additional funds from [Lynmar's designated representative] to which [petitioner in reconvention] refused to pay" and that "Ms. Scarbrough conspired with her attorney to create the illusion of [Lynmar's] refusal to pay her final wages."

Rule 2-12.2(C) prohibits language in briefs that includes the use of vile, obscene, obnoxious, or offensive expressions, and insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, or of any institution. Brumfield v. Village of Tangipahoa, 21-0082, p. 14 (La. App. 1st Cir. 12/20/21), 340 So. 3d 221,

---

[2] Lynmar does not contest on appeal the amount of costs awarded by the trial court.

233. Any violation of this prohibition shall subject the author, or authors, of the brief to punishment for contempt of court and to having such brief returned. URCA Rule 2-12.2(C). However, Rule 2-12.2(C) does not provide for the imposition of sanctions. Brumfield, 21-0082 at p. 14, 340 So. 3d at 233.

Regarding the requirements for filing motions in the appellate court, URCA-Rule 2-7-2 provides that all written motions filed in an appellate court, in addition to the formatting, layout, and service requirements, *must include a proposed order*. In filing her motion to strike and for sanctions, Scarbrough failed to attach or otherwise include a proposed order. As such, we find her motion fails to comply with URCA Rule 2-7.2. However, on our own motion, we order that the references in Lynmar's appellant brief and appellee brief, accusing Scarbrough of conspiring with her attorney and accusing Scarbrough's counsel of extortion, be stricken. See In re Ewing, 34,413, p. 9 (La. App. 2nd Cir. 3/2/01), 781 So. 2d 885, 892 (appellate court raised issue of violation of Rule 2.12.4 on its own motion); Simon v. Macro, Inc., 09-346 (La. App. 3rd Cir. 10/7/09), 2009WL3200628 *6 (unpublished opinion), writ denied, 09-2765 (La. 2/26/10), 28 So. 3d 278 (court declined to return the appellate briefs or hold the authors in contempt and instead ordered that the offensive portions of the briefs be stricken).

## CONCLUSION

For the foregoing reasons, we reverse those portions of the trial court's judgment denying Scarbrough's request for penalty wages and attorney fees and remand this matter to the trial court for the determination of the amount of penalty wages owed and the amount of attorney fees. The trial court's judgment is affirmed in all other respects. All costs of this appeal are assessed to Lynmar Holdings, LLC d/b/a The Learning Center.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**