635 So.2d 765 (1994)
Melinda M. PREVOST, M.D.
v.
EYE CARE AND SURGERY CENTER (A Professional Medical Corporation).
No. 93 CA 1016.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
B. Troy Villa, E.M. Quijano, Baton Rouge, for plaintiff-appellee Melinda M. Prevost, M.D.
Lawrence J. Molony, Metairie, Steven B. Loeb, Murphy J. Foster, III, Baton Rouge, for defendant-appellant Eye Care and Surgery Center (A Professional Medical Corp.).
Before FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
Plaintiff, Melinda M. Prevost, M.D. (Dr. Prevost) filed suit against defendant, Eye Care and Surgery Center (a Professional Medical Corporation) (Eye Care) alleging that she was wrongfully terminated from her position as an anesthesiologist for Eye Care, in violation of her employment contract. The trial court granted judgment in favor of Dr. Prevost, and awarded damages totaling $183,109.32. It is from this judgment that Eye Care now appeals. We affirm.

FACTS
Dr. Prevost and Eye Care entered into a written contract of employment, dated August 7, 1989. The contract called for Dr. Prevost to provide anesthesia services for Eye Care's ophthalmic surgical patients. The contract replaced a previous written agreement between the parties dated July 8, 1986 and signed August 5, 1986.
The contract in question specifically provides:
1. Eye Care and Surgery Center will reimburse Dr. Prevost seventy-five percent (75%) of net fees billed for her anesthesia *766 services. (Net fees are defined as gross charges less write offs.)
2. Dr. Prevost will maintain her own professional liability coverage which will meet the Louisiana minimum standards.

3. Eye Care and Surgery Center will charge and collect all anesthesia fees for services performed under this agreement.
4. Eye Care and Surgery Center will pay Dr. Prevost $650.00 per month as a lease payment on her anesthesia equipment. This monthly payment will cease at such time as Dr. Prevost completes her note payment on the equipment.
5. The term of this agreement is one year beginning June 1, 1989. This contract will automatically renew for another 12 month period unless either party gives notice in writing no later than March of each year.

6. Dr. Prevost will receive a monthly draw of $18,500.00. This amount will be adjusted either up or down as productivity changes. Any change in this monthly draw will be satisfactorily explained to Dr. Prevost in advance.
7. Dr. Prevost will personally provide all anesthesia services for Eye Care and Surgery Center unless she is ill or on vacation. Dr. Prevost will arrange for any substitute providers which are subject to approval as stated in Eye Care and Surgery Center staff bylaws. (Emphasis added).
At trial, Dr. Prevost testified that in June of 1990, Eye Care attempted to amend her contract by changing the compensation formula, her termination rights, and the amount of professional liability insurance she would be required to maintain. Dr. Prevost stated that she opposed these amendments.
On June 28 and 29, 1990, the Louisiana Department of Health & Hospitals (DHH) conducted an inspection and audit of Eye Care's Ambulatory Surgical Center. During the course of the inspection, DHH found deficiencies in Eye Care's documentation of physician credentials and privileges. On July 3, 1990, DHH issued a letter requiring Eye Care to come into compliance by September 27, 1990, or have its medical provider agreement and Louisiana license terminated.
Subsequent to DHH's inspection and notice of deficiencies to Eye Care, John Gross, Eye Care's administrator, notified all staff physicians by memorandum that the Eye Care's Governing Board had decided to raise the professional liability insurance to $3,000,000.00, and to require the return of compensation already paid to the physician, if the fee upon which the compensation is based is later disallowed by Medicare. Dr. Prevost testified that she construed this as a unilateral attempt to amend her contract and advised John Gross that she objected to these new conditions of employment.
On August 20, 1990, Dr. Prevost was asked to submit her resignation and when she refused, Dr. Louis G. Perez, President of Eye Care's Governing Board, advised her that she was terminated.
On November 15, 1990, Dr. Prevost filed suit alleging that Eye Care failed to perform its obligations under the contract by terminating her without just cause, without written notice and prior to the expiration of the contract. In her suit, Dr. Prevost sought to have Eye Care cast in judgment for all wages due under the contract through May 31, 1991, the end of the contract term, as well as all sums due under the contract from the fiscal year that ended May 31, 1990.
After trial on the merits, the trial court held that the contract in question was for a definite term, and Eye Care was without serious or just cause to terminate Dr. Prevost. The trial court then granted judgment in favor of Dr. Prevost for the net principal amount of $152,150.00 with legal interest from November 7, 1992 until paid. This devolutive appeal followed.

THE CONTRACT
On appeal, Eye Care argues first that the contract was not for a specific duration, and therefore Dr. Prevost's employment could be terminated at will in accordance with LSA-C.C. art. 2747, which provides:
A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
*767 In addition, Eye Care argues that if this court determines that there was a fixed duration for employment, Dr. Prevost's termination was justified because she had engaged in serious misconduct, citing LSA-C.C. art. 2749, which provides:
If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
Both Eye Care and Dr. Prevost cite Graham v. Magnolia School, Inc., 297 So.2d 435 (La.1974) as authority for their respective positions. In Graham, a teacher entered into an employment contract with the defendant, Magnolia School, Inc. of New Orleans. The contract provided that Graham would be engaged and employed by Magnolia School from the first day of May, 1956, to the first day of May, 1959. The contract additionally provided that the contract may continue in full force year after year, unless terminated by the Magnolia School's Board of Directors by written notice sixty days prior to severance. Graham's employment was terminated on August 29, 1968 by written notice and he was paid two months salary and subsistence at the time of termination. Graham filed suit alleging that the termination was in violation of the employment contract and was without cause. Magnolia, in response, argued that after lapse of the initial term, the contract term became indefinite and, therefore, terminable at will.
The Louisiana Supreme Court found that Graham's employment was one for a fixed term and held:
The agreement consists of two provisions independent of each other, one of which controlled with respect to the initial period of employment and the other after that term.
The provision which came into effect after the initial period obviously intended to modify the original agreement with respect to the term, compensation and to provide a method of termination.
We believe the intent of the parties was to continue the employment in increments of one year. The contract provides that the employment shall continue "year after year." Although this phrase may also be interpreted to mean merely an indefinite period, we do not think such a construction is reasonable in light of the nature of the employment. Such a factor may be properly considered in determining the contemplated term of employment where the intent of the parties may not be clear.
Dr. Prevost argues that the contract in the instant case and the employment contract in Graham are indistinguishable and supports the trial court's conclusion that the contract was for a definite term. The only exception, she contends, is that the language in the contract before us more clearly sets forth the parties' intent. Eye Care, on the other hand, argues that the decision in Graham suggests that this case should turn on the nature of the occupation and customary duration for the employment of anesthesiologists. Absent such evidence or judicial notice of such custom, the contract should be interpreted to mean employment for an indefinite term. The trial court, in its oral reasons for judgment, specifically rejected the notion that the contract in question was an "evergreen contract" (employment at will) and then stated, "I think it's clear that it is a year-to-year contract." The court then went on to say, "... it's a contract of term." We agree. This finding is supported by the record, and we cannot say that the trial court was manifestly erroneous.

SERIOUS CAUSE
Next we turn to Eye Care's contention that the trial court erred in not finding that it had serious or just cause to terminate the services of Dr. Prevost. At the heart of its contention is the argument that Dr. Prevost, by failing to execute the application for staff privileges, put its facility in violation of state law and jeopardized its license as a Medicare and Medicaid Health Care Facility. Eye Care argues that it had promulgated by-laws pursuant to DHH requirements mandating that all physicians execute an application for staff privileges on an annual basis. *768 Eye Care argues that not only was this requirement a lawful directive of the employer, but an absolute prerequisite under applicable law for the continued performance of the anesthesia services provided by Dr. Prevost. Eye Care further argues that it could not have lawfully permitted Dr. Prevost to continue in her position without the required application for staff privileges. To do so would have been a clear violation of state law. Eye Care submits that Dr. Prevost's refusal to execute any application for staff privileges for the year 1990 constitutes more than adequate just cause for termination.
Dr. Prevost, on the other hand, contends that Eye Care attempted to amend her contract under the guise of the application for staff privileges. She points out that the application for staff privileges went beyond DHH requirements regarding staff privileges, and no application for staff privileges that she previously signed included conditions regarding physicians professional liability insurance or medicare repayment. Dr. Prevost argues that to increase her professional liability insurance to $3,000,000.00 would be a significant change to her contract. She testified that she was then carrying the state minimum requirement of $1,000,000.00 of professional liability insurance, and her premium was somewhere in the neighborhood of $25,000.00 a year. Thus, the insurance increase would impact her income significantly.
The trial court, in its oral reasons for judgment, stated:
Her refusal standing alone to sign the staff application, in my opinion, would be good cause to let her go, but the preponderance is that it was not standing alone. In her eyes, and I am satisfied in good faith, that was her understanding. To sign that, she had to consent to the Three Million and accept the new change in pay status as far as reimbursement, which she admitted was not a sticking point, but the insurance was.
... She was fired, in my opinion, for not accepting the new insurance scheme, which would have been a change in the terms of her contract, and was not a valid reason for termination.
The Supreme Court of Louisiana developed a two part test for reviewing factual issues on appeal in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Under this test, appellate courts may not disturb a trier of fact's factual findings if:
1) The appellate court ... find[s] from the record that there is a reasonable factual basis for the finding of the trial court, and
2) The appellate court ... further determine[s] that the record establishes that the finding is not clearly wrong (manifestly erroneous).
Mart v. Hill, 505 So.2d 1120, 1127 (La.1987); Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). After our thorough review of the record, we find that there is a reasonable factual basis for the trial court to conclude that Eye Care failed to prove that the termination of Dr. Prevost was for serious or just cause. Consequently the trial court was not manifestly erroneous or clearly wrong in its finding.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Appellant, Eye Care, is to pay all costs of this appeal.
AFFIRMED.