729 So.2d 689 (1999)
Harrell L. LOUP, Jr.
v.
The LOUISIANA STATE SCHOOL FOR THE DEAF, et al.
No. 98 CA 0329.
Court of Appeal of Louisiana, First Circuit.
February 19, 1999.
*690 Thomas H. Kiggans, Darrell J. Loup, Karleen Joseph, Phelps Dunbar, L.L.P., Baton Rouge, LA, for Plaintiff-Appellee Harrell L. Loup, Jr.
*691 Margot A. Fleet, Louisiana Department of Education, Baton Rouge, LA, for Defendant-Appellant Department of Education Louisiana School for the Deaf.
BEFORE: LeBLANC, FOGG, and PARRO, JJ.
PARRO, J.
The Louisiana Department of Education appeals two trial court judgments, one awarding contractual damages and one awarding attorney fees to Harrell J. Loup, Jr, based on his discharge from summer employment with the Louisiana State School for the Deaf. Mr. Loup answered the appeal, seeking increased attorney fees for the appeal, along with statutory penalties.

FACTUAL AND PROCEDURAL BACKGROUND
Mr. Loup, a teacher and coach with the Louisiana State School for the Deaf (the school) for over twenty years, signed a written agreement to work during the summer of 1997, providing one-on-one tutoring for a particular student. The student was involved in legal proceedings and had a history of problem behavior, so there was some question about whether he would attend the full summer session. Loup had the opportunity to travel with his family during this time period, and he would have to give up that trip in order to tutor this student. Therefore, before agreeing to take the job, Loup sought and obtained assurances from Carol Bell, the woman supervising the Extended School Year Program (ESYP), that he would have a full four weeks of employment, four days each week, even if the student showed up for just one day of tutoring. The agreement, called a "Statement of Understanding," which was signed by Loup and the school's superintendent, Luther B. Prickett, assigned Loup to work during the ESYP for "16 days 7/7/97 - 7/31/97." The agreement did not specify a payment schedule, but Loup, Bell, and Prickett agreed the rate of pay for ESYP was always the teacher's daily rate, which for Loup was $216.80 per day.
The student Loup was to tutor participated in the program only two days, after which he was required to undergo a mental health evaluation and did not return. Bell assigned Loup to some other work on July 9, 1997, but later that day, she told him the superintendent had ordered her to discharge him as of 3:30 that afternoon. Loup immediately asked to meet with Prickett, but Prickett was not available to discuss Loup's discharge until the following Monday. At a meeting that morning, Loup asked Prickett to honor the contract by assigning him to work for the full sixteen days, explaining the assurances he had been given by Bell. However, Prickett declined, stating the agreement was not a contract, but merely a statement of understanding to memorialize the superintendent's discretion to employ Loup for one day or three days or the full ESYP term shown. The reference to sixteen days in the document merely defined the term of the ESYP, and was not a guarantee of work for that entire period. Prickett did not offer Loup any other work, although Loup offered to take some other assignment for the remainder of the month.
Thereafter, Loup made a written demand on Prickett and the school through his attorney, seeking work pursuant to the agreement and full payment of sixteen days' wages in the amount of $3,468.80. He was eventually assigned four additional days of work at the end of July and was paid $1,517.60 for seven days of work. The school offered Loup additional work the first week in August, but he refused because he had made a deposit on accommodations for a family vacation that week and was not willing to forfeit it, having already foregone one trip with his family. On August 1, Loup made a formal written demand for the rest of his wages for the full sixteen days on or before the next regular payday, which was August 15, 1997. This demand was rejected and the school, through counsel for the Louisiana Department of Education (the department), advised him the agreement would not be honored.
On September 10, 1997, Loup filed this suit against the department, the school, and Prickett, in his capacity as superintendent of *692 the school.[1] His suit requested nine days' wages in the amount of $1,951.20, plus legal interest from August 15, 1997, until paid. He also asked for penalty wages and attorney fees, pursuant to LSA-R.S. 23:632, and court costs. Under the authority of LSA-R.S. 23:631, which allows a claimant to proceed "pursuant to Code of Civil Procedure Article 2592," the matter was handled as a summary proceeding. After hearing testimony from Loup, Bell, and Prickett, the court found there was a contract calling for sixteen days' pay at Loup's average daily wages of $216.80 per day. On November 13, 1997, the court signed a judgment against the school and Prickett, awarding Loup the balance of the wages claimed ($1,951.20), plus legal interest through the date of the hearing ($42.63), continuing interest until paid ($.49 per day), and court costs ($440.00). In oral reasons, the court found the school's failure to pay was due to a good-faith dispute and the judgment denied statutory penalties and attorney fees. At a hearing on a motion for new trial, the court awarded attorney fees in the amount of $5,000, plus legal interest from December 2, 1997, the date of this judgment, until paid. This appeal of both judgments followed.

APPLICABLE LAW
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. LSA-C.C. art. 1906. A contract is formed by the consent of the parties through offer and acceptance, which can be made orally or in writing. LSA-C.C. art. 1927. Nominate contracts, those given a special designation such as sale, lease, loan, or insurance, are subject to special rules when those rules modify, complement, or depart from the general rules governing contracts. LSA-C.C. arts. 1914 and 1916. Hiring the services of another person is a form of lease. LSA-C.C. art. 2745; O'Neal v. Chris Steak House, Inc., 525 So.2d 325, 327 (La.App. 1st Cir.1988), writ not considered, 530 So.2d 556 (La.1988). For a contract of lease to be valid, there must be a thing, a price, and consent. LSA-C.C. art. 2670. If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived. LSA-C.C. art. 2749; Prevost v. Eye Care and Surgery Ctr., 93-1016 (La.App. 1st Cir.4/8/94), 635 So.2d 765, 767, writ denied, 94-1214 (La.7/1/94), 639 So.2d 1168.
Louisiana Revised Statutes 23:631 imposes a duty upon the employer, upon discharge or resignation of any employee, to pay the employee the amount then due under the terms of the employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. LSA-R.S. 23:631; Cochran v. American Advantage Mortgage Co., Inc., 93-1480 (La.App. 1st Cir.6/24/94), 638 So.2d 1235, 1239. Any employer who fails or refuses to comply with the provisions of LSA-R.S. 23:631 shall be liable to the employee either for ninety days' wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. LSA-R.S. 23:632. However, where there is a good-faith question of whether the employer actually owes past due wages to the discharged employee, the employer's resistance to payment of wages will not trigger the imposition of penalty wages. Henderson v. Kentwood Spring Water, Inc., 583 So.2d 1227, 1232 (La.App. 1st Cir.1991).
Reasonable attorney fees shall be allowed the employee by the court in the event a well-founded suit for any unpaid wages whatsoever be filed by the employee after three days shall have elapsed from the time of making the first demand following discharge or resignation. LSA-R.S. 23:632. *693 The award of reasonable attorney fees is mandatory when an employee brings a "well-founded" suit for unpaid wages, irrespective of any equitable defenses that may be raised by the employer. Suits in which the recovery of back wages is granted are considered "well-founded." Reasonable attorney fees are to be awarded in the event the employee files a well-founded suit for unpaid wages, even if penalty wages are not due. Wilson v. Inessa Stewart's Antiques, Inc., 96-2767 (La. App. 1st Cir.2/20/98), 708 So.2d 1132, 1135, writ denied, 98-0777 (La.5/8/98), 718 So.2d 435.
In order to fall within the purview of these statutes, the amount sought by the plaintiff must be due as wages under the terms of employment and must be payable by the hour, day, week, or month. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619, 621-22. A trial court's findings of fact with regard to whether the plaintiff is entitled to penalty wages cannot be reversed on appeal in the absence of manifest error or unless clearly wrong. Pokey v. Five L. Investments, Inc., 96-0018 (La.App. 1st Cir.1996), 681 So.2d 489, 492.

ANALYSIS[2]
In this appeal, the department asserts the trial court erred in the following particulars: (1) ruling that the Statement of Understanding is a contract; (2) awarding specific performance as damages; (3) failing to require Loup to mitigate his damages;[3] (4) ruling that Loup relied to his detriment on the school's promise of work; (5) awarding attorney fees; and (6) awarding excessive attorney fees.
The department argues that the Statement of Understanding is not really a contract; the only contracts entered into with the employees are those detailing the terms of their employment during the regular school year. The Statement of Understanding is used only to clarify that any compensation paid to a teacher for additional work, such as that performed during the ESYP, does not form a part of his basic compensation for purposes of percentage increases. Prickett testified he considered that this agreement merely allowed him to utilize Loup's services for any number of days during the sixteen-day term of the ESYP, but did not require him to provide work for the entire term. However, he admitted he would have considered Loup in breach of the agreement if Loup had decided to work for only one or two days, and then to take a day or two off to go fishing. Bell testified she told Loup if the student showed up for only one day of the ESYP, Loup would still be employed for the full term. According to Loup, Bell assured him when he agreed to take the assignment that, as the ESYP supervisor, she had the authority to make this representation. Indeed, Bell's actions evidence her intention to abide by this agreement, since she reassigned Loup to other work when the student was no longer in the program. Loup testified he would not have signed the agreement if it had said, "up to sixteen days" of ESYP.
We find no error in the trial court's finding that the Statement of Understanding was a contract of employment for a specific term. The parties agreed that Loup would work for sixteen days during the ESYP from July 7 to July 31, 1997. Although the price was not stated in the written agreement, both parties testified it was understood that the wages to be paid would be the same as Loup's daily rate during the regular school year. In fact, he was paid this amount, $216.80 per day, for the seven days he did work during this period. Accordingly, the three elements for a contract of lease of services were met.
Despite the department's contention in its second assignment of error, the court did not *694 award specific performance as damages. The court awarded wages for the full term stated in the contract, as required by Article 2749 of the Louisiana Civil Code. Prickett testified he did not know of any problems with Loup's performance during the three days he worked before being discharged. Accordingly, since Loup's services were terminated without any serious ground of complaint, the school was obligated to pay him the entire salary he would have earned, had he been allowed to continue working.
The department also claims the court erred in ruling that Loup relied to his detriment on the school's promise of work. In summarizing the testimony before making its ruling, the court stated, "Mr. Loup blocked out 16 days of working from his time during the summer, and he expected to go to work.... Mr. Loup changed his position in reliance on this contract that he would be working." The three elements required for application of detrimental reliance or equitable estoppel are: a representation by conduct or work; justifiable reliance thereon; and a change of position to one's detriment because of the reliance. LSA-C.C. art.1967; Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Div., 97-0121 (La.App. 1st Cir.2/20/98), 710 So.2d 799, 804, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51. While the court's musings do suggest elements of detrimental reliance, the court did not base its ruling on this theory, which is an alternative to a contract that can create an enforceable obligation. Rather, the court here found a contract did exist, and awarded damages for the breach of this particular kind of contract.
Finally, the department contends attorney fees should not have been awarded and, even if this court finds such an award was proper, the fees were excessive. We disagree with both arguments. In addition to the Civil Code articles applicable to the lease of services, the legislature has enacted specific statutes to protect employees when their employment terminates for any reason. Under LSA-R.S. 23:631, the wages due to an employee must be paid in full within three days of his discharge or resignation. The employer's failure to make such payment subjects him to the penalties imposed under LSA-R.S. 23:632, which include penalty wages and reasonable attorney fees. If an employee is required to bring suit to enforce his right to unpaid wages, and if that suit is well-founded, an award of attorney fees "shall be allowed the laborer or employee by the court...." LSA-R.S. 23:632. If any award of unpaid wages is made by the court, the suit is considered "well-founded," even if some equitable defense precludes the award of penalty wages. Accordingly, the court did not err in awarding attorney fees in this case. Moreover, having examined the itemized statement showing the work done by Loup's attorneys in this case, we conclude the court did not err in finding those fees were reasonable, as required by the statute.
Accordingly, we find no merit in the department's assignments of error. Loup answered the appeal, seeking additional attorney fees for the appeal. Additional attorney fees are usually awarded on appeal when a party appeals, obtains no relief, and the appeal has necessitated additional work on the opposing party's counsel, provided that the opposing party appropriately requests an increase. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1st Cir.), writ denied, 553 So.2d 466 (La.1989). Although many of Loup's well-briefed arguments were also presented to the trial court, the briefs did include additional arguments to address the department's assignments of error, and Loup's attorneys did appear for oral argument. Accordingly, we award an additional $1000 for the work necessitated by this appeal.
In his answer to the appeal, Loup also requested this court to award penalty wages in accordance with LSA-R.S. 23:632. We decline. The school clearly did not fully understand the import of its wording on the Statement of Understanding. We do not believe Prickett and the school were being arbitrary or in bad faith in deciding there were no wages owed for the time Loup did not work. Generally, this would be a justifiable conclusion. However, because the wording of the contract established a fixed period of employment and Loup was willing to work the entire period, his discharge in *695 the absence of complaints concerning his performance justified wages for the entire period. A trial court's determination of whether an employer is arbitrary or in bad faith for purposes of imposing penalty wages is a question of fact and is, therefore, subject to the manifest error standard of review. Barrilleaux v. Franklin Foundation Hosp., 96-0343 (La.App. 1st Cir.11/8/96), 683 So.2d 348, 360, writ denied, 96-2885 (La.1/24/97), 686 So.2d 864. We conclude the evidence supports the trial court's conclusion and, viewed in the context of the entire record, it was not manifestly erroneous.

CONCLUSION
The trial court's judgment regarding attorney fees is amended to add $1000 for the appeal, plus interest on that amount from the date of this judgment until paid. In all other respects, the judgments are affirmed. All costs of this appeal, in the amount of $726.23, are assessed against the department.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The petition actually named "a yet to be identified state agency and/or entity legally responsible" for the school's obligations. A response was filed by the department on behalf of "Defendants, the Louisiana State School for the Deaf." The judgment shows the department's general counsel represented both the school and Prickett, in his capacity as superintendent of the school.
[2] We note that the motions for appeal show the appellant is the Louisiana State Department of Education. The motions do not say on whose behalf the department is appealing, whether just for the school or also on behalf of Prickett, in his capacity as superintendent. However, the judgments indicate the department's attorney was representing both defendants. Accordingly, we will treat the department's appeals as having been entered on behalf of the school and Prickett.
[3] This assignment of error was not briefed, so it is considered abandoned, pursuant to Uniform Rules, Courts of Appeal, Rule 2-12.4.