952 So.2d 98 (2006)
Peter SCHUYTEN
v.
SUPERIOR SYSTEMS, INC.
No. 2005 CA 2358.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
Rehearing Denied March 28, 2007.
*100 G. Steven Duplechain, Mark D. Plaisance, Baton Rouge, Counsel for Plaintiff/Appellee Peter Schuyten.
Lesia H. Batiste, Baton Rouge, Counsel for Defendant/Appellant Superior Systems, Inc.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
GUIDRY, J.
In this suit for unpaid wages, defendant appeals a judgment awarding plaintiff unpaid wages, penalty wages, and attorney fees. For the reasons assigned, we affirm the trial court judgment, as amended.

FACTS AND PROCEDURAL HISTORY
In October 2003, Peter Schuyten (Schuyten), was hired by David Thomas (Thomas) to work at Superior Systems, Inc. (SSI) *101 as a technician earning $12 per hour.[1] SSI is in the business of selling and leasing cash registers and surveillance cameras to businesses. Approximately two months later, Schuyten was promoted to a position overseeing the camera department and working in camera sales. According to Schuyten, Thomas allowed him the choice of being paid a thirty percent commission on his personal sales or $500 per week plus ten percent commission on the net profit of all camera department sales. He chose the latter option.
On or about March 23, 2004, Schuyten was terminated for cause. On April 13, 2004, he sent a demand letter to SSI requesting payment of a ten percent commission on five specific sales that allegedly occurred prior to his termination. After SSI failed to respond, Schuyten filed suit on July 20, 2004, seeking payment of unpaid commissions on the five sales, penalty wages, reasonable attorney fees, and costs. He also sought an additional commission on another sale for which he claimed he was not paid his full commission. In its answer, SSI denied Schuyten was entitled to any of the claimed commissions. Following trial, the trial court rendered judgment awarding Schuyten $6,720 for unpaid wages, $15,978 for penalty wages, and $3,000 for attorney fees, as well as legal interest and all court costs. SSI has now appealed.

ASSIGNMENTS OF ERROR
1. The trial court erred in finding Schuyten proved by a preponderance of the evidence he was entitled to a commission on the Blue Harbor sale, since that sale was not included in his demand letter.
2. The trial court erred in finding Schuyten proved by a preponderance of the evidence he was entitled to commissions on the five sales included in his demand letter.
3. The trial court erred in relying on inadmissible evidence to prove the net profit and commission due on the five sales at issue.
4. The trial court erred in assessing penalty wages and attorney fees; in the alternative, the trial court erred in calculating the penalty wages.

APPLICABLE LAW
Louisiana Revised Statute 23:631 imposes a duty on an employer, upon discharge of an employee, to pay the employee the amount then due under the terms of the employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge.[2] An employer who fails or refuses to comply with the requirements of La. R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer either pays or tenders the amount of unpaid wages owed the employee, whichever amount is less. La. R.S. 23:632. However, where there is a good *102 faith question of whether the employer actually owes wages to the discharged employee, the employer's resistance to payment of wages does not warrant the imposition of penalty wages. Loup v. State School for the Deaf, 98-0329, p. 5 (La.App. 1st Cir.2/19/99), 729 So.2d 689, 692. To recover penalties under La. R.S. 23:632, the employee must prove: (1) wages were due and owing; (2) demand for payment was made at the place where the employee was usually paid; and (3) the employer failed to pay upon demand. Cleary v. LEC Unwired, L.L.C., 2000-2532, p. 9 (La.App. 1st Cir.12/28/01), 804 So.2d 916, 923. La. R.S. 23:632 is penal in nature and must be strictly construed. Cleary, 2000-2532 at p. 9, 804 So.2d at 923.
Further, an award of reasonable attorney fees is mandatory in the event an employee brings a well-founded suit for unpaid wages, even if penalty wages are not due. Suits in which the recovery of back wages is granted are considered well-founded. See La. R.S. 23:632; Cleary, 2000-2532 at pp. 9-10, 804 So.2d at 923; Loup, 98-0329 at p. 5, 729 So.2d at 692-93.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
SSI contends the trial court erred in finding Schuyten was entitled to unpaid wages consisting of a ten percent commission on the five sales included in his demand letter. It argues Schuyten failed to sufficiently prove he had earned these commissions at the time of his termination. The sales in question were made to Beene Health Mart Drugs (Beene), Galliano Food Store (Galliano), Don's Carwash (Don's), Feliciana Super Valu (Feliciana), and St. Francisville Market (St.Francisville).
There was no evidence that SSI had a written commissions policy. Nor did Schuyten have a written employment contract with SSI. At trial, conflicting evidence was presented regarding the amount of sale commission Schuyten was to be paid, as well as whether he earned these commissions only on his personal sales or on all camera department sales. Schuyten testified that when he was promoted Thomas allowed him to choose whether his compensation would be a thirty percent commission on his personal sales or $500 per week plus ten percent commission on the net profit earned on all camera department sales. He testified he chose the latter option. In direct opposition, Thomas testified the agreement was for Schuyten to be paid a five percent commission on his personal sales only.
After hearing the conflicting evidence, the trial court specifically found Thomas was not a credible witness and concluded Schuyten was entitled to a ten percent commission on the net profit of all sales that originated or emanated from the camera department. For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Cleary, 2000-2532 at p. 4, 804 So.2d at 919. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given great deference by the appellate court. Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences *103 are as reasonable. Cleary, 2000-2532 at p. 4, 804 So.2d at 919. Based on our thorough review of the record, we cannot say the trial court committed manifest error or was clearly wrong in concluding Schuyten was entitled to a ten percent commission on all camera department sales. This finding was based entirely on the trial court's credibility determinations, which are entitled to great deference.
SSI further argues the trial court erred in accepting Schuyten's testimony that the sales at issue were completed and his commission earned at the time of his termination. Under La. C.C. art. 2456, a sale is complete "between the parties as soon as there is an agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid." Patterson v. Alexander & Hamilton, Inc., XXXX-XXXX, p. 6 (La.App. 1st Cir.4/2/03), 844 So.2d 412, 416. Generally, when sale commissions are at issue, the inquiry of whether a wage was actually earned focuses on what work associated with the sale remained at the time of the employee's discharge. See Graves v. Automated Commercial Fueling Corporation, 2005-2561 (La.App. 1st Cir.11/3/06), 950 So.2d 759; Patterson, XXXX-XXXX at p. 7, 844 So.2d at 416; Becht, XXXX-XXXX at p. 5, 822 So.2d at 59. Where only collection of the fee is outstanding and collection is beyond the control of the employee, the employee has earned his commission pursuant to La. R.S. 23:634. However, if a substantial amount of time and effort are needed to complete a sale, then the right to a commission may not have been earned. See Patterson, XXXX-XXXX at p. 7, 844 So.2d at 416-17.
In Nolfo v. Landeche, 339 So.2d 1331 (La.App. 1st Cir.1976), a salesman made several sales prior to his termination. Nevertheless, his former employer argued he was not entitled to full commissions on the sales because obtaining a signature on an order form was only part of the work necessary to complete the sale, and the salesman never completed the post-sale work. However, the salesman testified he was not required under the verbal employment contract to do any more than he had done to complete a sale. The trial court awarded the salesman full commissions on the sales, and this court affirmed (after amending to correct an error in the amount of the award).
In the instant case, Schuyten initially testified his commissions were earned when the sale occurred and a deposit was collected from the customer. He later indicated it was his understanding that his commissions were earned at the point of sale, which he explained was when the customer agreed to purchase the equipment at a certain price.
Schuyten testified the point of sale for each of the five sales at issue occurred prior to his termination. Further, he indicated his responsibilities basically were fulfilled once these sales occurred, and he knew of no other duties he had other than scheduling training and installation dates and completing a sheet listing the equipment needed for the installation. According to Schuyten, other departments handled customer training, equipment installation, customer billing, and collection of the purchase price once a sale occurred.
Additionally, Schuyten introduced documentary evidence that invoices were sent or deposits made in the Beene, Feliciana, and St. Francisville sales prior to his March 24, 2004 termination. The original invoice for the Galliano sale was also dated before Schuyten's termination, although a revised invoice for that sale was dated the day after his termination. Finally, although the invoice for the Don's sale was dated July 6, 2004, there was evidence that *104 a deposit was made for this sale by check dated January 9, 2004. Moreover, it was undisputed that salesmen at SSI had no control over when invoices were prepared, that being a task performed by the accounting department.
To support its contention that the trial court erred in accepting Schuyten's testimony, SSI relies on the testimony of Thomas and Kent Willis (Willis), a salesman employed by SSI. They both testified it was SSI's policy that commissions were not earned on sales until delivery, installation, and final payment of the purchase price had occurred. Thus, SSI contends Schuyten had not earned commissions on the sales at the time of his termination because each of these events had not occurred. Further, Thomas testified it was generally the salesman's responsibility to order equipment and coordinate installation, to make certain the customer was properly trained, and to be available to reassure the customer and answer questions. SSI asserts Schuyten failed to fulfill these post-sale duties with respect to the sales at issue. Thomas also testified it was the salesman's responsibility to collect deposits on sales. However, Willis indicated he received a commission once the customer made final payment, even if he did not collect a deposit on the sale.
According to Willis, he was usually present during equipment installation to make certain everything went smoothly and his customers were happy. However, he admitted it was the responsibility of the service department to handle any equipment problems. With respect to the Galliano sale, he testified he and another salesman were the ones who convinced the customer to agree to a final price. He further stated he had to visit Galliano on three occasions following Schuyten's termination to reinstall cameras for the customer, who kept changing his mind about their location. He admitted he was not required as a salesman to do installations, and indicated he did so in this instance because SSI's service technicians were busy.
In concluding Schuyten proved he had earned a commission on each of the five sales at the time of his termination, the trial court obviously credited Schuyten's testimony regarding his post-sale duties and the point at which sale commissions were earned over the conflicting testimony of SSI's witnesses. We have thoroughly reviewed the entire record in this matter and find that a reasonable basis exists for the trial court's findings. According to Schuyten's testimony, each of the sales at issue occurred prior to his termination, and his responsibilities with respect to these sales were substantially complete at that time. His testimony indicated only a few minor tasks, such as scheduling installation and completing an install equipment sheet, remained to be done at the time of his termination, since it was the responsibility of the service department to install the equipment and of the accounting department to bill the customers. Considering the evidence in its entirety, we cannot say the trial court committed manifest error in concluding Schuyten had earned commissions on the disputed sales at the time of his termination. The trial court's conclusions were based largely on its credibility findings and are entitled to great deference. See Cleary, 2000-2532 at p. 4, 804 So.2d at 919.
SSI also contends the trial court committed manifest error in awarding Schuyten an additional commission on a sale made to Blue Harbor Point Carwash (Blue Harbor). The record reveals Schuyten and another salesman were each paid a five percent commission on this sale. Thomas explained the commission was split between the two men because the other salesman initially opened the account *105 and worked on it almost a year before Schuyten became involved.
Schuyten testified he immediately protested to Thomas about receiving only a five percent commission, but did not demand additional payment because he wanted to keep his job. At trial, he asserted he was owed an additional five percent commission on the sale since his agreement with SSI was that he would receive a ten percent sale commission. As previously noted, the trial court accepted Schuyten's testimony that he was entitled to a ten percent commission. Nevertheless, SSI argues Schuyten could not recover any additional commission on the sale because he did not make a demand for it as required by La. R.S. 23:632.
SSI's assertion that a demand for payment is one of the requirements for recovery of penalty wages under La. R.S. 23:632 is correct.[3]See Cleary, 2000-2532 at p. 9, 804 So.2d at 923. However, that fact has no bearing on the issue of an employer's liability for the actual amount of wages due to a discharged employee under his employment contract.[4] Upon the discharge of an employee, La. R.S. 23:631 imposes a mandatory duty on employers to pay any amount then owed to the employee. The duty to pay the actual wages due is not dependent on the employee making a demand for payment. See La. R.S. 23:631; compare Otwell v. Howard Lumber & Supply Company, Inc., 283 So.2d 826, 829-30 (La.App. 2nd Cir.), writ denied, 286 So.2d 364 (La.1973). Thus, the trial court properly awarded Schuyten an additional five percent commission on the Blue Harbor sale.

ASSIGNMENT OF ERROR NUMBER THREE
SSI contends the trial court erred in relying on inadmissible evidence to establish the net profit for the five sales at issue. It was undisputed that the amount of the commission due was based on SSI's net profit for a sale.
To establish net profits, Schuyten introduced the invoices for each of the five sales, which listed the equipment the customers were billed for and the cost paid by the customers, as well as a cost list showing SSI's wholesale costs for the equipment sold. SSI objected to the introduction of the cost list on the grounds that "no foundation [was] laid as to where these documents came from" and they "looked like something he [Schuyten] created himself." *106 However, contrary to these assertions, Schuyten testified Thomas emailed the list to him while he was still employed at SSI so that he could use it in preparing customer proposals.
All relevant evidence is admissible, except as otherwise provided by law. La. C.E. art. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La. C.E. art. 401. The trial court is granted broad discretion in its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Smith v. Smith, 2004-2168, p. 14 (La.App. 1st Cir.9/28/05), 923 So.2d 732, 742. Under the circumstances, we find no abuse of the trial court's broad discretion in the admission of the cost list that Schuyten testified was provided to him by his boss in the course of his employment with SSI.
We also find no merit in SSI's contention that, in order to determine SSI's net profit, the trial court relied on uncertain and speculative evidence as to the equipment installed for each customer and the retail cost of that equipment. While Schuyten may not have had firsthand knowledge of the specific equipment installed, since he was no longer working for SSI at the time of installation, he introduced invoices establishing the equipment purchased by each customer, as well as evidence of the payment of those invoices. Further, to establish SSI wholesale costs for the equipment, he presented the cost list that he was provided and used for that same purpose during his employment with SSI.
Although we find no merit in SSI's contention that the trial court relied on speculative evidence, our review indicates the trial court did err in determining the net profit on the Galliano sale. It appears the trial court calculated the commission for this sale on a retail figure of $32,000, based on the original invoice sent to Galliano on March 15, 2004. However, the evidence reflects that Galliano was sent a revised invoice for $30,000 on March 24, 2004, which was then further reduced to $29,400. The $29,400 figure should have been utilized in calculating the net profit on this sale, since that was the amount actually paid to SSI. Thus, the award for unpaid wages must be reduced by $260 (ten percent of the $2,600 discrepancy between the figure used by the trial court and the actual amount paid by Galliano), resulting in an award for unpaid wages in the amount of $6,460.

ASSIGNMENT OF ERROR NUMBER FOUR
SSI argues the trial court erred in awarding penalty wages and attorney fees because Schuyten failed to prove by a preponderance of the evidence that he had earned any commissions that were unpaid at the time of his termination. This contention is a reiteration of arguments we have already rejected in connection with assignment of error number two. It presents nothing new for our consideration.
To recover penalties under La. R.S. 23:632, the employee must prove: (1) wages were due and owing; (2) a demand for payment must have been made at the place where the employee was usually paid; and (3) the employer failed to pay upon demand. See Cleary, 2000-2532 at p. 9, 804 So.2d at 923. Generally, when there is a good faith question of whether the employer actually owes past due wages, resistance to payment will not trigger penalty wages. Loup, 98-0329 at p. 5, 729 So.2d at 692. However, when the employer is arbitrary, sets out procedural pitfalls for the employee, or is merely negligent in *107 failing to pay past due wages, penalty wages will be assessed. A trial court's findings of fact with regard to whether the plaintiff is entitled to penalty wages cannot be reversed on appeal in the absence of manifest error. Loup, 98-0329 at p. 6, 729 So.2d at 693. Further, an award of reasonable attorney fees is mandatory in the event an employee brings a well-founded suit for unpaid wages. A suit in which the recovery of back wages is granted is considered well-founded. See La. R.S. 23:632; Cleary, 2000-2532 at pp. 9-10, 804 So.2d at 923; Loup, 98-0329 at p. 5, 729 So.2d at 693.
The evidence in this case established Schuyten was owed unpaid commissions at the time of his termination, he made written demand for most of those commissions, and SSI refused to pay. Further, there was no evidence of a good faith defense justifying SSI's refusal to pay the commissions Schuyten demanded. Therefore, an award of penalty wages was warranted under La. R.S. 23:632. Further, in suits such as this one where the recovery of unpaid wages is granted, an award of reasonable attorney fees is mandatory.[5]See Cleary, 2000-2532 at p. 10, 804 So.2d at 923.
Finally, SSI argues in the alternative that the trial court erred in computing Schuyten's average daily wage, which consequently resulted in an incorrect award to him of $15,978 for penalty wages. It argues penalty wages should have been calculated based on the evidence that Schuyten was paid $12.50 per hour and earned $500 per week for the two weeks preceding his termination. Based on those earnings, SSI contends the maximum award for penalty wages should have been $6,428.57.[6]
SSI's calculation of penalty wages is incorrect because it is based on what Schuyten allegedly would have earned during a ninety-day period, rather than on "ninety days wages." Under La. R.S. 23:632, penalty wages shall be the lesser of (1) ninety days wages at the employee's daily rate of pay, or (2) full wages from the time of the employee's demand for payment until the time the employer shall pay or tender the amount of unpaid wages due. In this case, the lesser amount is ninety days wages because SSI failed to pay or tender the unpaid wages for a period well in excess of ninety days. Therefore, Schuyten was entitled to ninety days wages at his daily rate of pay. See La. R.S. 23:632; Jones v. LeBlanc, 263 So.2d 119, 122 (La. App. 1st Cir.1972).
Nevertheless, there is merit in SSI's contention that the $15,978 award for penalty wages was excessive. Although it is unclear how the trial court calculated this award, it appears it may have erroneously included Schuyten's commissions in computing his daily rate of pay. While commissions clearly are considered "wages" for purposes of La. R.S. 23:631, the jurisprudence indicates they generally are not utilized in determining an employee's "daily rate of pay" for purposes of calculating penalty wages under La. R.S. 23:632. See Potvin v. Wright's Sound Gallery, Inc., 568 So.2d 623, 628 (La.App. 2nd Cir.1990) (penalty wages calculated on employee's base salary, without commissions); Howser v. Carruth Mortgage Corporation, 476 So.2d 830, 836 (La.App. 5th Cir.1985) (commissions not utilized in calculation of penalty wages); Hess v. Pembo, 422 So.2d 503, 508 (La.App. 4th Cir.1982) (penalty wages calculated on employee's minimum *108 salary or draw since her commissions fluctuated). This conclusion is in accord with the fact that La. R.S. 23:632 is penal in nature and must be strictly construed. See Cleary, 2000-2532 at p. 9, 804 So.2d at 923.
In the instant case, the record reveals that Schuyten was paid $500 per week and worked eighty hours in a two-week period. Inferring from this evidence that he worked eight hours a day, five days a week, his daily rate of pay would be $100. Therefore, he was entitled to an award for penalty wages in the amount of $9,000 (ninety days wages at the daily rate of pay of $100). Accordingly, the award for penalty wages in this case must be reduced to that amount.

CONCLUSION
For the reasons assigned, the judgment of the trial court is amended to reduce the award for unpaid wages to $6,460 and to reduce the award for penalty wages to $9,000. The judgment of the trial court is affirmed in all other respects. The costs of this appeal are to be shared equally by the parties.
AFFIRMED, AS AMENDED.
NOTES
[1] Although Thomas was not the owner of SSI at the time he hired Schuyten, Thomas purchased the company at some point during Schuyten's employment.
[2] For purposes of La. R.S. 23:631 and 632, wages include sale commissions. See Graves v. Automated Commercial Fueling Corporation, 2006-2561, p. 4 (La.App. 1st Cir.11/3/06), 950 So.2d 759; Patterson v. Alexander & Hamilton, Inc., XXXX-XXXX (La.App. 1st Cir.4/2/03), 844 So.2d 412, 416-417; Becht v. Morgan Buildings & Spas, Inc., XXXX-XXXX (La.App. 1st Cir.6/21/02), 822 So.2d 56, 58, affirmed, 2002-2047 (La.4/23/03), 843 So.2d 1109, cert denied, 540 U.S. 878, 124 S.Ct. 289, 157 L.Ed.2d 142 (2003).
[3] Louisiana Revised Statute 23:632 provides that:

Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
[4] We are aware of, but need not consider based on the facts presented in this case, the jurisprudence indicating that the filing of a suit for unpaid wages and the denial of liability by the employer is a sufficient basis for the imposition of statutory penalties and/or attorney fees under La. R.S. 23:632, even when no demand for payment was made prior to the suit. See Carriere v. Pee Wee's Equipment Company, 364 So.2d 555, 557 (La.1978); M & D Simon Company v. Blanchard, 389 So.2d 401, 402-403 (La.App. 4th Cir.1980) (on rehearing); Ruffin v. Klein, 209 So.2d 45, 46-47 (La.App. 4th Cir.1968). But see Mitchell v. Fein, 281 So.2d 463, 464 (La.App. 4th Cir. 1973).
[5] SSI did not appeal the amount awarded for attorney fees.
[6] SSI reached this figure by calculating that 12.86 weeks was the equivalent of ninety days, then multiplying that number by $500 (i.e., 12.86 × $500).