McLENDON, J.
A former employee appeals a trial court judgment ordering payment of vacation leave by his former employer, but failing to award the employee penalty wages and attorney's fees. For the following reasons, we amend the judgment, and as amended, affirm.
FACTS AND PROCEDURAL HISTORY
Eugene Molina was employed by Oilfield Production Contractors, Inc. ("OPC") as a lead operator until he was terminated by OPC on July 23, 2015. On February 16, 2016, Mr. Molina filed a Rule to Show Cause seeking to hold OPC liable for failing to pay forty-four hours of accrued vacation pay allegedly owed him, as well as penalty wages, attorney's fees, and costs. OPC answered Mr. Molina's rule, asserting that he had been paid in full for the three vacation days earned at the time of his termination.
Following a hearing, the trial court found that Mr. Molina was owed $244.76, *339 representing .89 days of pay. However, the trial court concluded that OPC had not acted in bad faith, and it denied Mr. Molina's claim for penalties and attorney's fees.
Mr. Molina has appealed, asserting that the trial court erred in concluding that he was entitled to only .89 days of vacation pay, and by refusing to award penalty wages and attorney's fees.
DISCUSSION
The Louisiana Wage Payment Act, LSA-R.S. 23:631, et seq. , is designed to compel prompt payment of earned wages upon an employee's discharge or resignation. Davis v. St. Francisville Country Manor, L.L.C., 13-0190 (La.App. 1 Cir. 11/01/13), 136 So.3d 20, 22. Specifically, LSA-R.S. 23:631(A)(1)(b) provides that upon resignation of an employee, the employer shall pay the employee "the amount then due under the terms of employment" on or before the earlier of the next regular pay day or fifteen days following the employee's discharge. For purposes of LSA-R.S. 23:631(A), wages are equivalent to the "amount then due under the terms of employment," i.e., wages, or compensation, earned during a pay period. Davis, 136 So.3d at 22. Subsection D(1) addresses vacation pay and provides as follows:
For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
The main purpose of the wage payment law is to compel an employer to pay the earned wages of an employee promptly after his dismissal or resignation and to protect discharged Louisiana employees from unfair and dilatory wage practices by employers. Berard v. L-3 Communications Vertex Aerospace, LLC, 09-1202 (La.App. 1 Cir. 2/12/10), 35 So.3d 334, 342, writ denied, 10-0715 (La. 6/4/10), 38 So.3d 302.
In his first assignment of error, Mr. Molina contends that he is entitled to the full four days of vacation pay he earned under OPC's vacation policy and had not used at the time of his July 2015 termination, rather than the .89 vacation days awarded by the trial court. Specifically, Mr. Molina contends that he earned 7 days' vacation pay beginning on January 1, 2015, and since he had used only 3 vacation days at the time he was terminated, OPC owed him the balance of 4 days.
On the other hand, OPC contends that employees were only entitled to 7 days of vacation if they worked the entire year. Because Mr. Molina worked from January 1 through July 22, or 203 days out of 365 days, OPC maintains that Mr. Molina accrued 3.89 days at the time he had been terminated. OPC maintains Mr. Molina had therefore accrued only 3 full vacation days; had already been paid for 3 vacation days (April 9, 10, and 11) at the time he was terminated; and was owed nothing further. Nevertheless, OPC has not challenged the trial court's finding that Mr. Molina was owed vacation pay for .89 days.
In interpreting contracts, we are guided by the general rules contained in LSA-C.C. arts. 2045 - 2057. Campbell v. Melton, 01-2578 (La. 5/14/02), 817 So.2d 69, 74. The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless *340 the words have acquired a technical meaning. LSA-C.C. arts. 2045 and 2047 ; Campbell, 817 So.2d at 74. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. LSA-C.C. art. 2046 ; Campbell, 817 So.2d at 75.
When the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. LSA-C.C. art. 2045. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. LSA-C.C. art. 2053 ; Amend v. McCabe, 95-0316 (La. 12/1/95), 664 So.2d 1183, 1187-88. Contract interpretation of ambiguous terms requires construction against the contract's drafter. LSA-C.C. art. 2056, Campbell, 817 So.2d at 75.
Whether a contract is ambiguous or not is a question of law. Amitech U.S.A., Ltd. v. Nottingham Const. Co., 09-2048 (La.App. 1 Cir. 10/29/10), 57 So.3d 1043, 1058, writs denied, 11-0866, 110953 (La. 6/17/11), 63 So.3d 1036, 1043. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. Id.
Regarding vacation pay, OPC's vacation policy provided:
Vacation Pay: Seven days/80 hours, per year at your regular base hourly rate. Vacation must be scheduled with the office at least 4 weeks prior to scheduled date. Emergency vacation may be granted with documentation applying for emergency. Salaried employees are paid on hourly base pay and hours worked per day.
The terms of the vacation pay in OPC's policy, i.e. "Seven days/80 hours, per year," is ambiguous in that it does not specifically indicate when those days accrue, either at the beginning at the year or pro-rata over the course of the year. Moreover, the policy does not indicate that vacation pay will be pro-rated in the event an employee leaves the company. Cf. Grady v. Choices of Louisiana, Inc., 13-437 (La.App. 5 Cir. 3/12/14), 138 So.3d 42, 43, writ denied, 14-0756 (La. 5/23/14), 140 So.3d 729 (wherein the appellate court found that an employee who was terminated before the end of the year should have her vacation pay pro-rated for the time period she worked where the company's policy provided that if an employee left the company before December 31, his or her vacation would be pro-rated by the number of weeks he or she had worked during the year.)
Mr. Molina testified that his understanding of the policy was that OPC employees earned the seven days of vacation pay at the beginning of the year. Mr. Molina also testified that in prior years he had sometimes taken four to five vacation days for Mardi Gras when he would not have accrued that much time if vacation days were on a pro-rata basis. Mr. Molina admitted that in 2014 and 2015, he had not used any vacation time for Mardi Gras.
Thomas Arceneaux, Mr. Molina's supervisor, testified that Mr. Molina "[p]robably could have" taken all seven vacation days in April had he wanted. Mr. Arceneaux also indicated that "[a] lot of people" would use the seven vacation days at the beginning *341 of the year. Mr. Arceneaux also testified, however, that an employee that did not work the entire year would not be entitled to the full seven vacation days. Mr. Arceneaux indicated that at the time Mr. Molina was terminated, he had already taken three vacation days. As such, based on the computation, Mr. Arceneaux testified that Mr. Molina perhaps may be owed "part of a day" in vacation pay, but that OPC did not "pay partial days."
Given that any ambiguity in the vacation policy must be construed against the drafter and considering the custom of allowing employees to take all seven vacation days at any time during the year, we conclude that Mr. Molina was eligible for and had accrued the right to take seven days' vacation at the time he was terminated. Mr. Molina had only been compensated for three of those days. Accordingly, we conclude that the trial court manifestly erred in only awarding Mr. Molina .89 of a day's vacation pay. Therefore, we amend the judgment to award Mr. Molina $1,100.04, representing four vacation days at a rate of $275.01 per day.
In his second assignment of error, Mr. Molina contends that the trial court erred by failing to award penalty wages based on OPC's failure to pay the full four days of vacation pay owed him as required by LSA-R.S. 23:631. Any employer who fails or refuses to comply with the provisions of LSA-R.S. 23:631 shall be liable to the employee either for ninety days' wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. LSA-R.S. 23:632. However, where there is a good-faith question of whether the employer actually owes past due wages to the discharged employee, the employer's resistance to payment of wages will not trigger the imposition of a penalty wage. Loup v. Louisiana State School for the Deaf, 98-0329 (La.App. 1 Cir. 2/19/99), 729 So.2d 689, 692. A trial court's findings of fact with regard to whether the plaintiff is entitled to penalty wages cannot be reversed on appeal in the absence of manifest error or unless clearly wrong. Id. at 693.
The trial court found that Mr. Molina was not entitled to penalty wages. In so finding, the trial court indicated that it believed that the issue of post-termination vacation pay had simply never come up before and had never been previously addressed by OPC. The trial court found that while OPC made "an improper judgment on it," OPC had not acted in bad faith and Mr. Molina was not entitled to penalty wages. Following our review of the record, specifically including Mr. Arceneaux's testimony, we cannot conclude that OPC arbitrarily refused to pay the unused vacation days. Accordingly, the trial court did not manifestly err in denying penalty wages. Mr. Molina's second assignment of error is without merit.
In his third assignment of error, Mr. Molina contends that the trial court erred in failing to award him attorney's fees, given that he obtained relief.[1] Louisiana Revised Statutes 23:632(C) provides that "[r]easonable attorney fees shall *342 be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation." The award of reasonable attorney fees is mandatory when an employee brings a "well-founded" suit for unpaid wages, irrespective of any equitable defenses that may be raised by the employer. Loup, 729 So.2d at 693. Suits in which the recovery of back wages is granted are considered "well-founded." Id. Reasonable attorney fees are to be awarded in the event the employee files a well-founded suit for unpaid wages, even if penalty wages are not due. Id. Where the record does not detail time and costs of an attorney's services, the court may nonetheless fix the fee. Chesterfield v. Genesis Hospice, L.L.C., 13-0179 (La.App. 1 Cir. 12/19/13), 137 So.3d 22, 25.
Rule 1.5 of the Rules of Professional Conduct provides the following factors to be considered by the court in setting reasonable attorney fees:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
Considering the entirety of the record in light of the aforementioned factors, we award attorney fees of $5,000.00.[2]
CONCLUSION
For the foregoing reasons, we amend the trial court's judgment to raise the vacation leave award from $244.76 to $1,100.04. Having concluded that an award of attorney fees is mandated when a suit for unpaid wages is successful, we amend the judgment and order defendant, Oilfield Production Contractors, Inc., to pay attorney fees in the amount of $5,000.00. The judgment is affirmed in all other respects. Costs of this appeal are assessed against Oilfield Production Contractors, Inc.
AMENDED, AND AS AMENDED, AFFIRMED.

Although OPC contends that Mr. Molina's demand was insufficient to warrant the imposition of attorney fees, the record indicates that Mr. Molina made a demand for his vacation pay through both an e-mail and a certified letter. Further, even after suit was filed, OPC made no additional payments to Mr. Molina. Therefore, we find no error in the trial court's conclusion that Mr. Molina made sufficient demand as required by LSA-R.S. 23:632.

This figure represents compensation for the work done both at the trial court level as well as on appeal.